UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


HAIDER ALI KHAN, et al.,

      Plaintiffs,

v.                                                    CASE NO. 8:15-cv-2632-T-23TGW

BANKUNITED, INC., et al.,

      Defendants.

_____/


## **ORDER**

Haider Ali Khan, Nazeer Haider Khan, Sabiha Haider Khan, QHP Group, Inc., and QHP Financial Group, Inc., sue (Doc. 36) BankUnited, Inc., BankUnited, N.A., Richard Fischer, John Hotchkiss, and Mark C. Foley.  The plaintiffs allege a Racketeer Influenced and Corrupt Organizations Act (RICO) violation, a RICO conspiracy, and state-law claims for breach of contract, unjust enrichment, intentional infliction of emotional distress, tortious interference with a contract, and civil conspiracy.  The defendants move (Doc. 51, 52) to dismiss the second amended complaint and argue that the facts contained in the complaint are insufficient to state a claim upon which relief can be granted.

## **BACKGROUND**

Quality Health Plan, Inc., (QHP–HMO) is a wholly owned subsidiary of QHP Group (QHP), a Florida health maintenance organization,.  QHP Group owns all

the shares of QHP-HMO.  (Doc. 36 at 2)  The individual defendants worked for

Herald National Bank, which lent $5 million to QHP Group.  Florida's HMO

regulations prohibit the encumbrance of the assets of an HMO as security for a loan.

The defendants allegedly engaged in mail and wire fraud and misrepresented to

federal and state regulators the nature of QHP's loan collateral, despite knowing that

the defendants' actions would injure the plaintiffs' good reputation and result in the

plaintiffs' criminal prosecution.  (Doc. 36 at 2–3)

> The plaintiffs claim that:

>> the defendants impeded and obstructed the enforcement and
>> regulatory functions of the federal and state agencies through their
>> pattern of misrepresentation regarding whether the $5 million QHP
>> Group Loan was collateralized by assets of QHP-HMO and whether
>> Herald Bank was entitled to appropriate $5 million from QHP-HMO's
>> bank account, and through knowingly withholding documents and
>> information from the federal and state regulators showing that Herald
>> Bank had no collateral rights to the money held by QHP-HMO.

(Doc. 36 at 4)  The plaintiffs seek $300,000,000 in damages, treble damages, and an

attorney's fee.  (Doc. 36 at 3)

**Count IV — Unjust Enrichment**

The plaintiffs allege (Doc. 36 at 52) that BankUnited was unjustly enriched

and claim that the plaintiffs "conferred upon Herald Bank the rights to QHP-Group

and QHP's financial banking business which included serving as custodian of $5

million in QHP-HMO's bank account."  Herald Bank allegedly "unlawfully took the

$5 million and thereby appreciated, accepted or retained the benefits conferred by the

individual plaintiffs." (Doc. 36 at 52)  Under New York law a plaintiff must plead

that the "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and

good conscience militate against permitting defendant to retain what plaintiff is

seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306

(2d Cir.2004) (Cardamone, J.).

BankUnited argues (Doc. 51 at 25) that a claim for unjust enrichment is

invalid because a valid and enforceable contract exists.  "The existence of a valid and

enforceable written contract governing a particular subject matter ordinarily

precludes recovery in quasi-contract for events arising out of the same subject

matter." *Clark Fitzpatrick, Inc. V. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)

(Alexander, J.).  Second, BankUnited argues that the claim is improperly brought by

the Khans who do not have an individual claim to the $5 million belonging to QHP-

HMO.  (Doc. 51 at 26)  "The [complaint] is replete with allegations that defendants

inappropriately applied the . . . cash belonging to QHP-HMO to repay and close the

loan to QHP Group . . . .  Accordingly, the Khans did not confer the $5 million or

any benefit at all on Herald Bank."  (Doc. 51 at 26)

The Khans respond:

> [the plaintiffs] have not asserted any contractual rights to the . . .
> $5 million . . . .  QHP Group's breach of contract action does not
> seek disgorgement of the $5 million as damages, but rather general
> contractual damages for the breach of contract. The [receiver] . . .
> would ultimately receive the $5 million should defendants disgorge
> those specific funds, while individual plaintiffs would seek additional
> unjust enrichment [that the] defendants obtained by virtue of that
> unlawful taking. There is no contractual remedy available to the
> individual plaintiffs for this relief . . . . Where a defendant has been

> unjustly enriched to the detriment of individuals with no available
> contractual remedy, New York law . . . provide[s] for the remedy of an
> unjust enrichment cause of action.

(Doc. 56 at 28–29)

However:

> The question here—whether the existence of a valid written
> contract between two parties precludes an action for unjust enrichment
> against a third party who is not a party to the contract—is somewhat
> unsettled. . . . The Court finds the trend of recent New York state and
> federal decisions to be persuasive and concludes that a claim for unjust
> enrichment, even against a third party, cannot proceed when there is
> an express agreement between two parties governing the subject matter
> of the dispute.

*Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896, at 12-13 (S.D.N.Y. 2008)

(Sullivan, J.).  Because the individual plaintiffs bestowed no benefit on BankUnited

and because the plaintiffs fail to sufficiently allege BankUnited's enrichment at the

plaintiff's expense (the plaintiffs merely state (Doc. 36 at 53) that "Herald Bank

profited . . . at the expense of the individual plaintiffs"), the allegations fail to state a

claim and Count IV is dismissed.

**Count V — Intentional Infliction of Emotional Distress**

The plaintiffs sue for intentional infliction of emotional distress.

> Under Florida law, to state a claim for intentional infliction of
> emotional distress, the plaintiff must establish the following: (1)
> defendant acted recklessly or intentionally; (2) defendant's conduct was
> extreme and outrageous; (3) defendant's conduct caused the plaintiff's
> emotional distress; and (4) plaintiff's emotional distress was severe. *See*
> *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla.
> 1985). Courts uphold claims for IIED in only 'extremely rare
> circumstances.'

*Delk v. Bank of America, N.A.*, 2016 WL 70617, at *4 (M.D. Fla. Jan. 6, 2016)

(Corrigan, J.)  Whether conduct is extreme and outrageous is a question of law.

*Metro. Life Ins.*, 467 So. 2d at 279.  "Liability has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  *Delk*, 2016 WL 70617, at *4.

The plaintiffs fail to allege any facts establishing that the defendants' conduct

was extreme or outrageous and fail to identify emotional distress in the plaintiffs.

The alleged conduct is neither extreme nor outrageous.  The plaintiffs plead

"conclusory allegations and resort to a bare boned recitation of the elements."

(Doc. 51 at 27)  Thus, Count V fails to satisfy Rule 8(a) and is dismissed.

## Count VI — Tortious Interference With a Contract

To succeed in a tortious interference claim the plaintiffs must plead "(1) the

existence of a business relationship . . . (2) knowledge of the relationship on the part

of the defendant; (3) an intentional and unjustified interference with the relationship

by the defendant; and (4) damage to the plaintiff as a result of the breach of the

relationship."  *Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126, 1127 (Fla. 1985).

Count VI falls foul of Rule 8(a) because the plaintiffs fail to plead the existence

of any particular agreement or business relationship between QHP-HMO and QHP,

fail to describe the actions taken by the defendants to interfere with such an

agreement, and fail to adequately allege damages caused by the defendants'

purported interference.

Case 8:15-cv-02632-SDM-TGW   Document 58   Filed 01/11/17   Page 6 of 6 PageID 2294

## CONCLUSION

The motions to dismiss (Docs. 51, 52) are **GRANTED-IN-PART**.  The

plaintiffs sufficiently state a claim under Counts I, II, III, and VII.  Counts IV, V, and

VI are **DISMISSED WITH PREJUDICE**.  No later than **JANUARY 25, 2017**, the

plaintiffs must amend the complaint to comply with this order (that is, to re-number

the counts consecutively, omitting the dismissed counts and adding no new claims)

and condense the complaint to no more than twenty-five pages.  All parties are

reminded of the September 23, 2016 order, which states that "[t]he complaint in this

action is excessive in length and the other papers apparently trend in the same

direction. This order creates no precedent or expectation for further enlargements of

motions or other papers."  (Doc. 50)

ORDERED in Tampa, Florida, on January 11, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 6 -